**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 SW Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **CODY PLAGMANN**, <br><br> Plaintiff, <br><br> v. <br><br> **THE CITY OF OAKRIDGE; THE STATE OF OREGON; ROBEART CHRISMAN; LARRY GILLUM; VALERI MILLER-FILLMAN**; and **DAVID HARRIS**, <br><br> Defendants. | Case No. 6:24-cv-1634 <br><br> **COMPLAINT** <br><br> (§1983 Claims: Fourth Amendment Excessive Force, First Amendment Retaliation, Malicious Prosecution, and Conspiracy; State Common law Assault, Battery, and Negligence; Employment Retaliation and Aiding and Abetting) <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      Plaintiff brings this action to remedy violations of Plaintiff's constitutional and statutory rights under First, Fourth, and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. §1983. Plaintiff seeks compensatory damages, as well as his attorneys' fees and costs.

2.      Plaintiff also seeks damages under Oregon State law for assault, battery, and negligence, as well as employment retaliation and aiding and abetting under ORS 659A.030(1)(f) and (g).

## JURISDICTION

3.      This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

4.      Plaintiff requests that this court exercise supplemental jurisdiction under 28 U.S.C. § 1367 of plaintiff's state law claims.

## VENUE

5.      Venue is proper within the District of Oregon because all of the events giving rise to this claim occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). Specifically, all of the acts and practices alleged herein occurred in Lane County, Oregon.

## PARTIES

6.      Plaintiff is a resident of Oregon.

7.      Defendant Robeart Chrisman was at all times material a Maintenance Supervisor with the Public Works Department of Oakridge. At all times material, Defendant Chrisman acted under color of law and is sued in his individual capacity.

8.      The State of Oregon operates the Oregon Department of Corrections (ODOC) and employs defendants Larry Gillum and David Harris.

9.      Defendant City of Oakridge ("the City") is and at all material times hereto has been a municipal corporation in the State of Oregon. As a local governmental entity, the City is a

person under 42 U.S.C. § 1983. At all material times, the City employed defendants Chrisman and Miller-Fillman.

10.     Defendant Valeri Miller-Fillman was at all times material a police officer with the Oakridge Police Department. At all times material, Defendant Miller-Fillman acted under color of law and is sued in her individual capacity.

11.     Defendant Larry Gillum was at all material times a correctional sergeant employed by ODOC. At all material times, Defendant Gillum acted under color of law and is sued in his individual capacity.

12.     Defendant David Harris was at all material times a correctional officer employed by ODOC. At all material times, Defendant Harris acted under color of law and is sued in his individual capacity.

## FACTUAL ALLEGATIONS

13.     On October 3, 2022, Plaintiff was working as a flagger along with a crew of other inmates directing traffic for fire crews battling the Cedar Creek forest fire near Oakridge, Oregon in Lane County. Plaintiff was incarcerated at Snake River Correctional Facility. While working on the fire crew he was supervised by ODOC staff including Defendants Gillum and Harris.

14.     On several previous occasions defendant Chrisman had driven through the forest service camp area where the fire crews were working. He was evidently driving through to reach either his home or work and was frustrated that the flaggers were directing traffic and telling drivers to slow down. On these occasions, Defendant Chrisman rudely yelled at inmate flaggers saying that it was his road, sped through the area, and refused to slow down when directed to do so by flaggers.

15.     On October 3, 2022, Defendant Chrisman again drove his work truck through the

camp area, and disregarded flaggers requesting that he slow down. Plaintiff approached the

vehicle to direct Defendant Chrisman to slow down. He did not slow down, and instead swerved

and hit plaintiff with the side mirror of his car.

16.     Multiple witnesses viewed this event and all of the contemporaneous witness

statements stated that Defendant Chrisman refused to slow down, as he had on previous

occasions, and hit plaintiff with the side mirror of his work vehicle. In fact, Defendant Chrisman

*admitted* to hitting plaintiff with his truck and *admitted* to driving away from the scene. This is a

crime. *See* Or. Rev. Stat. § 811.705. Despite the fact that he admitted to driving away from the

scene of an accident in which his car struck a pedestrian, he was never charged with a crime.

17.     Following the accident, ODOC staff called the police. Defendant Miller-Fillman

arrived on scene to investigate. She took statements from several witnesses including Defendant

Chrisman. Concerning her interview of Defendant Harris she wrote the following:

> I arrived on scene and contacted Officer Harris, with the Oregon
> Department of Corrections. He stated his crew was directing traffic
> and trying to slow people down. Officer Harris stated the Oakridge
> Public Works crew came in for work today and they were asked to
> slow down. Officer Harris stated while the crew was trying to ask
> the public works crew to slow down, Plagmann was hit by one of
> the city trucks. Officer Harris stated the driver did not stop and
> continued to drive to the public works building.

Concerning her interview of Ronnie Oropeza she wrote the following:

> I also contacted Security manager, Ronnie Oropeza, who stated the
> public works employees were asked to slow down as they were
> coming through the camp because there is a lot of traffic. He stated
> there has been an on-going issue with the public works employees
> speeding through the camp and when they are asked to slow down,
> the camp crew members are met with aggression. Oropeza stated
> this morning the driver in the white public works truck, identified
> as Robeart Chrisman, hit Plagmann with his truck and continued to
> drive, without stopping. Oropeza informed me, Plagmann was

being seen by the medics assigned to the camp. Oropeza stated
Plagmann had an abrasion on his right arm and pain to his right hip
and back. Oropeza informed me they were sending Plagmann to
the hospital to be further checked out to air on the side of caution.

18.    Defendant Miller-Fillman collected written witness statements from the witness

on scene and attached them to her report. Those written reports clearly stated that plaintiff was

hit by the car being driven by Defendant Chrisman, that Chrisman did not stop, and that he drove

away after hitting plaintiff.

19.    Defendant Miller-Fillman then contacted Josiah Larsen at the public works

building. Larsen told her that the crew directing traffic was walking in front of their moving

vehicles and telling them to slow down. Larsen claimed he was going "10 MPH," and someone

walked in front of his car and told him to slow down. Larsen admitted that he told the crew

directing traffic to "fuck off."

20.    Defendant Miller-Fillman then contacted Defendant Chrisman, who was in his

office. Defendant Chrisman stated the camp crew was trying to direct traffic and were yelling at

the public works employees to slow down. Chrisman stated he turned his head to look back at the

person yelling at him, and when he turned his head back to look forward, he saw plaintiff

walking into the side of his vehicle. Defendant Chrisman admitted his mirror hit plaintiff and

folded in when it hit him. Defendant Chrisman then said that plaintiff "threw himself to the

ground." Chrisman admitted to not stopping to check on plaintiff, which is a crime. Defendant

Miller-Fillman chose not to charge Chrisman with a crime despite the fact that he admitted to

one.

21.    On October 6, 2022, Mr. Cleavenger called Ms. Miller-Fillman and told her that

two individuals had come forward and indicated that an inmate (JR) had come forward and told

the officer that he and plaintiff had "fabricated" the hit and run. This was false, JR never told

anyone that he and plaintiff had "fabricated" the hit and run, and this was made up entirely by

Defendants Gillum and Harris. Memoranda were sent along which were alleged to support this

lie. In fact, none of them did, other than statements from officers. Bizarrely, Defendant Gillum

included JR's statement of what occurred, and JR said nothing about any "set up" or fabrication.

Instead, each of these documents makes clear that every person that viewed the event saw

Defendant Chrisman drive quickly without heeding the traffic flaggers and that Defendant

Chrisman hit Plaintiff with his side mirror. Indeed, Defendant Chrisman admits this is what

happened.

22.    Following this report from Mr. Cleavenger, on October 13, 2022, Defendant

Miller-Fillman, drafted a follow up report. In this report she concluded that

> With evidence collected through investigation statements, witness
> statements, and omissions from AIC/ Plagmann and [JR], I believe
> there is evidence to prove AIC/ Plagmann, committed the crime of
> initiating a false report, defined in ORS 162.375.
>
> This incident cost the city of Oakridge a total of $ 195.25 for
> Officer wages to investigate this false report.
>
> Chrisman is a long term, career employee with the city of
> Oakridge, and has been employed with the city for 20 years.
> Chrisman holds the position of Oakridge Public Works Lead and is
> the head supervisor for public works. AIC/ Plagmann's actions had
> the potential to cause serious negative consequences to Chrisman's
> 20 year [sic] career and had the potential for criminal charges.
> According to the witness statements [JR] came forward because he
> did not feel it was right for Chrisman to endure any of the potential
> consequences because Chrisman did not do anything wrong. AIC/
> Plagmann and [JR] were both transported back to the Oregon State
> Penitentiary, where they are currently lodged.

23.    In fact, Defendant Miller-Fillman never interviewed either plaintiff or JR, nor

ever saw a statement from Plaintiff. Defendant Miller-Fillman did see a statement from JR, but

that statement contradicts the story offered by Defendants Harris and Gillum. Also, she did not

bring charges against Defendant Chrisman despite the fact that he admitted to committing a crime.

24.    This report was submitted to the Lane county DA, who in turn brought criminal charges against plaintiff by information on December 12, 2022. On the same date, Lane County Assistant DA David Jampolsky submitted a probable cause affidavit filed by Defendant Miller-Fillman. In her sworn affidavit, she states that another person submitted information to the effect that JR came forward to admit to the plan to fabricate a hit and run. What she neglected to mention is that that person was relating the statement from Mr. Harris. In addition to her previous statements, she then stated that

> Plagman admitted to ODOC Sgt. Gillum, he fabricated the incident and self-inflicted injuries upon himself using a stapler and rubbing his arm with force to cause friction and turn his arm red.

This again is transparently false and unsupported by any evidence. In fact, Defendant Harris, not Defendant Gillum allegedly said this in an unsigned note that was for reasons unclear photographed with someone's phone and submitted to Defendant Miller-Fillman. What makes this contention obviously false is that (1) Defendant Chrisman admitted to hitting Plaintiff with his truck, and (2) when asked if he wanted medical attention, Plaintiff declined. In fact, as Defendant Miller-Fillman wrote in her report: "Dispatch advised **the Oregon Department of Corrections supervisor reported** one of the inmates he was supervising was hit by a Public Works trucks and the driver did not stop. Dispatch advised the victim, Cody Plagmann, declined medics." In other words, Plaintiff did not report anything, his supervisor did. By definition he could not have committed the crime of Initiating a False Report under ORS 162.375 because he did not initiate any report. Also, even if he had, the report was true: plaintiff was struck by a vehicle and the person driving the vehicle did not stop or remain at the scene.

25.    Nevertheless, Plaintiff was subsequently charged with Initiating a False Report under ORS 162.375. These charges were based upon the police report and statements made by Defendants Chrisman, Miller-Fillman, Harris, and Gillum, which they knew to be false at the time they made them. This criminal charge was based on knowingly false testimony by Defendants. Defendants Chrisman, Harris, Miller-Fillman and Gillum engaged in a conspiracy to cover up Defendant Chrisman's crime and blame it on two hapless inmates, two inmates that neither the police nor the prosecutor ever bothered to question.

26.    All of the individually named defendants (Chrisman, Miller-Fillman, Harris, and Gillum) knew that plaintiff was in fact hit by the car and that Plaintiff had not made any report, and thus by definition could not have been guilty of the crime he was charged with. Plaintiff never spoke to the police, never filed a report, and never provided a written or oral statement. Every witness that observed the incident provided written statements indicating that Defendant Chrisman intentionally disregarded flaggers and drove quickly and recklessly through the area and hit plaintiff with the side mirror of his city vehicle. None of this is disputed. They knew that the elements of ORS 162.375 were not met and fabricated criminal charges against Plaintiff anyway.

27.    On March 16, 2023, the meritless criminal charges based upon the knowingly false statements of Defendants Chrisman, Miller-Fillman, Harris, and Gillum were dismissed by Lane County Assistant DA Jampolsky, who stated as follows, "The state of the evidence is such that a material element of the crime cannot be proven beyond a reasonable doubt."

28.    To date the discipline imposed on plaintiff by the ODOC has not been rescinded to removed.

## COUNT I

### (42 U.S.C. § 1983 – Fourth Amendment – Excessive Force)

### (Against Defendant Chrisman)

29.     Plaintiff re-alleges all previous relevant paragraphs as if fully stated herein.

30.     At all relevant times, Defendant Chrisman was acting under color of law, within the scope of his employment as a Maintenance Supervisor with the City of Eugene Public Works Department, a municipal entity. By virtue of his official position and authority, Defendant Chrisman acted under color of law when he engaged in the conduct described below.

31.     The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees individuals the right to be free from unreasonable seizures, including the use of excessive force by government officials.

32.     On or about October 3, 2022, Defendant Chrisman, while operating a city-owned vehicle, used excessive and unreasonable force by striking Plaintiff with his vehicle. Plaintiff was acting as a flagger at the fire camp near the City of Oakridge, directing traffic as part of his duties when Defendant Chrisman, in disregard of lawful instructions, drove his vehicle recklessly, ignored traffic control signals, and struck Plaintiff with the side mirror of his vehicle.

33.     Defendant Chrisman's use of force—driving his vehicle in a reckless manner and striking Plaintiff, who was lawfully directing traffic—was objectively unreasonable under the circumstances. Plaintiff posed no threat to Defendant Chrisman or any other person, and there was no need for any use of force, let alone the dangerous use of a vehicle to strike Plaintiff.

34.     As a direct result of Defendant Chrisman's excessive and unreasonable use of force, Plaintiff sustained physical injuries, including abrasions on his right arm, pain to his right

hip and back, and emotional distress. Plaintiff was forced to seek medical attention due to the injuries caused by Defendant's actions.

35.     Defendant Chrisman acted with deliberate indifference to Plaintiff's rights and safety by failing to follow lawful instructions from traffic flaggers, speeding through the area, and striking Plaintiff. His actions were reckless, malicious, and done with disregard for the substantial risk of harm to Plaintiff and others present at the scene.

36.     Defendant Chrisman's conduct deprived Plaintiff of his right to be free from unreasonable seizures and excessive force, in violation of the Fourth Amendment to the United States Constitution. At all relevant times, it was clearly established that the use of excessive force, particularly involving a motor vehicle, against a non-threatening individual was unlawful.

37.     As a direct and proximate result of Defendant Chrisman's violation of Plaintiff's Fourth Amendment rights, Plaintiff has suffered damages, including but not limited to, physical pain, emotional distress, medical expenses, and other compensatory damages. Plaintiff is entitled to recover these damages pursuant to 42 U.S.C. § 1983.

38.     Defendant Chrisman's actions were willful, wanton, and undertaken with reckless disregard for Plaintiff's constitutional rights. Plaintiff is entitled to punitive damages to punish Defendant for his unlawful conduct and to deter future violations of this nature.

39.     Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover reasonable attorney's fees and costs incurred in this action.

**COUNT II**

**(Assault and Battery)**

**(Against Defendant City)**

40.     Plaintiff re-alleges all previous relevant paragraphs as if fully stated herein.

41.    Defendant City through its employee acting within the course and scope of his employment caused harmful and offensive contact with Plaintiff, to wit, striking him with his car.

42.    At the time of the incident, Defendant Chrisman was acting within the course and scope of his employment with the City of Eugene. Therefore, the City of Eugene is vicariously liable for the negligent actions of its employee, Defendant Chrisman, under the doctrine of respondeat superior.

43.    As a result of the above-described battery, Plaintiff suffered mental, emotional, and physical pain and injuries. Plaintiff seeks compensatory damages to redress these injuries.

44.    Plaintiff is entitled to costs and disbursements incurred herein.

## COUNT III

### (Negligence)

### (Against Defendant City)

45.    Plaintiff re-alleges all previous relevant paragraphs as if fully stated herein.

46.    Defendant Chrisman, acting in the course and scope of his employment with the City of Eugene, was subject to Oregon law and was required to operate his vehicle in accordance with all applicable traffic laws, including the obligation to follow the directives of flaggers controlling traffic at the worksite.

47.    Under Oregon Revised Statutes (ORS) 811.540 and other relevant traffic laws, all drivers are required to comply with the directions of traffic control personnel, including flaggers directing traffic. Defendant Chrisman failed to comply with these directives when he disregarded the flaggers' signals and warnings on October 3, 2022, at the fire camp and proceeded to drive through the area at an unsafe speed.

48.     Defendant Chrisman's violation of ORS 811.540 and other applicable traffic laws constitutes negligence per se, as these laws are designed to protect the public, including pedestrians and workers like Plaintiff, from the specific harm caused by drivers failing to follow traffic control directives.

49.     As a direct result of Defendant Chrisman's failure to follow the flaggers' instructions, Defendant Chrisman struck Plaintiff with his vehicle, causing physical injuries to Plaintiff. The force of the collision resulted in abrasions on Plaintiff's arm, pain in Plaintiff's hip and back, and required Plaintiff to seek medical attention.

50.     Defendant Chrisman's violation of the traffic laws was a substantial factor in causing Plaintiff's injuries. As a result of Defendant's negligence per se, Plaintiff suffered physical pain, emotional distress, and incurred medical expenses.

51.     At the time of the incident, Defendant Chrisman was acting within the course and scope of his employment with the City of Eugene. Therefore, the City of Eugene is vicariously liable for the negligent actions of its employee, Defendant Chrisman, under the doctrine of respondeat superior.

52.     Plaintiff seeks compensatory damages for the injuries and losses caused by Defendant Chrisman's negligence per se, including but not limited to, medical expenses, pain and suffering, and emotional distress. Plaintiff also seeks costs and attorney's fees incurred in bringing this action. Plaintiff is entitled to costs and disbursements incurred herein.

### COUNT IV

### (42 U.S.C. § 1983 – First Amendment Retaliation)

### (Against Defendants Chrisman, Miller-Fillman, Harris, and Gillum)

53.     Plaintiff realleges and incorporates by reference the above paragraphs.

54.     The First Amendment to the United States Constitution protects persons from unlawful curtailment of expressive conduct, assembly, and association.

55.     Plaintiff was engaged in constitutionally protected acts of free speech when he reported truthfully that he was struck by a vehicle by a city official who then fled the scene in violation of state law.

56.     By targeting and using threats and criminal prosecution against Plaintiff, Defendants Chrisman, Miller-Fillman, Harris, and Gillum chilled his political speech and violated his First Amendment rights.

57.     Plaintiff reasonably fears further retaliation in the future in violation of the First Amendment if he continues to participate in constitutionally protected activity.

58.     Defendants Chrisman, Miller-Fillman, Harris, and Gillum's conduct caused Plaintiff emotional distress. Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

59.     Defendants Chrisman, Miller-Fillman, Harris, and Gillum's acts were willful and malicious and done with reckless indifference to Plaintiff's protected rights. Defendants Chrisman, Miller-Fillman, Harris, and Gillum should be assessed punitive damages in an amount as fixed by a jury to punish him and to deter such conduct in the future.

60.     Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT V

### (42 U.S.C. § 1983 – Malicious Prosecution)

### (Against Defendants Chrisman, Miller-Fillman, Harris, and Gillum)

61.     Plaintiff realleges and incorporates by reference the above paragraphs.

62.     At all relevant times, Defendants Chrisman, Miller-Fillman, Gillum, and Harris were acting under color of law and within the scope of their employment as officials with the City, Oakridge Police Department, and ODOC, respectively.

63.     Plaintiff had a clearly established constitutional right under the Fourth and Fourteenth Amendments to be free from malicious prosecution, which includes being prosecuted without probable cause and based on false evidence or testimony.

64.     After the October 3, 2022, incident in which Defendant Chrisman struck Plaintiff with his vehicle, Defendants conspired to falsely accuse Plaintiff of initiating a false report under ORS 162.375. Defendants knowingly provided false statements and fabricated evidence to justify bringing criminal charges against Plaintiff.

65.     Defendants Chrisman, Miller-Fillman, Harris, and Gillum knew or should have known that there was no probable cause to support the charge of initiating a false report. Plaintiff never made a false report, and the evidence unequivocally demonstrated that Defendant Chrisman had, in fact, struck Plaintiff with his vehicle. Witnesses confirmed that Chrisman recklessly disregarded the traffic flaggers and drove through the area, hitting Plaintiff with his side mirror.

66.     Defendants Miller-Fillman, Harris, and Gillum engaged in a conspiracy to fabricate evidence and present knowingly false statements to the authorities to cover up Defendant Chrisman's unlawful actions. These false statements included allegations that Plaintiff and another inmate (referred to as "JR") had fabricated the hit-and-run incident. Despite the lack of any corroborating evidence, Defendants initiated and pursued criminal charges against Plaintiff.

67.    Defendants acted with malicious intent in pursuing these baseless criminal charges against Plaintiff. Their actions were designed to protect Defendant Chrisman from the consequences of his reckless conduct and to shift blame onto Plaintiff, a vulnerable inmate who was not involved in any fabrication of the incident.

68.    On March 16, 2023, the criminal charges against Plaintiff were dismissed by the Lane County District Attorney's Office, which concluded that "a material element of the crime cannot be proven beyond a reasonable doubt." This dismissal demonstrates that the charges against Plaintiff lacked any legal or factual basis from the outset.

69.    Defendants' actions deprived Plaintiff of his rights under the Fourth and Fourteenth Amendments to be free from unlawful prosecution and seizure. Plaintiff suffered a deprivation of his liberty, as well as emotional distress, as a result of the baseless criminal proceedings initiated and pursued by Defendants.

70.    As a direct and proximate result of Defendants' malicious prosecution, Plaintiff suffered damages, including but not limited to, emotional distress, reputational harm, legal expenses, and the loss of liberty. Plaintiff is entitled to recover these damages pursuant to 42 U.S.C. § 1983.

71.    Defendants' actions were willful, malicious, and done with reckless disregard for Plaintiff's constitutional rights. Plaintiff is entitled to punitive damages to punish Defendants for their unlawful conduct and to deter future violations of this nature.

72.    Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover reasonable attorney's fees and costs incurred in this action.

**COUNT VI**

**(42 U.S.C. § 1983 – Conspiracy)**

**(Against Defendants Chrisman, Miller-Fillman, Harris, and Gillum)**

73.    Plaintiff realleges and incorporates by reference the above paragraphs.

74.    At all relevant times, Defendants Chrisman, Miller-Fillman, Harris, and Gillum acted under color of law and within the scope of their respective roles as employees of the City, the Oakridge Police Department, and ODOC.

75.    Defendants entered into a mutual agreement and/or understanding to deprive Plaintiff of his constitutional rights under the First, Fourth, and Fourteenth Amendments, including the right to be free from malicious prosecution and the right to be free from retaliation for engaging in constitutionally protected speech.

76.    Specifically, Defendants Chrisman, Miller-Fillman, Harris, and Gillum conspired to cover up the fact that Defendant Chrisman struck Plaintiff with his vehicle and subsequently fled the scene, an incident witnessed and corroborated by multiple individuals.

77.    As part of the conspiracy, Defendants fabricated evidence and made false statements to law enforcement, claiming that Plaintiff had fabricated the hit-and-run incident. Defendants Harris and Gillum falsely alleged that Plaintiff, along with another inmate, had "set up" the incident in an effort to frame Defendant Chrisman. These statements were knowingly false and were intended to shift blame away from Defendant Chrisman and onto Plaintiff.

78.    Defendant Miller-Fillman, acting in concert with the other Defendants, conducted a biased investigation and relied on the false statements provided by Defendants Harris, Gillum, and Chrisman. Defendant Miller-Fillman failed to interview critical witnesses, including Plaintiff

and the other inmate (JR), and ignored the overwhelming evidence that Defendant Chrisman had struck Plaintiff with his vehicle.

79.    Defendants' agreement and concerted actions resulted in the initiation of false criminal charges against Plaintiff for allegedly making a false report under ORS 162.375. These charges were initiated without probable cause and were based entirely on fabricated evidence and false testimony provided by the Defendants.

80.    As a direct and proximate result of the conspiracy among Defendants Chrisman, Miller-Fillman, Harris, and Gillum, Plaintiff suffered a violation of his constitutional rights, including his right to be free from false prosecution, retaliation, and unlawful seizure under the First, Fourth, and Fourteenth Amendments.

81.    Plaintiff also suffered significant harm, including but not limited to emotional distress, reputational damage, legal expenses, and loss of liberty, as a result of the criminal charges and related proceedings initiated by Defendants.

82.    Defendants acted willfully, maliciously, and with reckless disregard for Plaintiff's constitutional rights in furtherance of their conspiracy to shield Defendant Chrisman from the consequences of his actions and to retaliate against Plaintiff for truthfully reporting the incident.

83.    Plaintiff is entitled to compensatory damages, including damages for emotional distress, reputational harm, legal costs, and other losses, as a result of Defendants' conspiracy to violate his constitutional rights.

84.    Plaintiff is also entitled to punitive damages against Defendants for their willful and malicious conduct in conspiring to violate his constitutional rights.

85.    Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover reasonable attorney's fees and costs incurred in this action.

## COUNT VII

### (Malicious Prosecution)

### (Against Defendants City and State)

86.     Plaintiff re-alleges and incorporates by reference all previous relevant paragraphs as if fully set forth herein.

87.     At all relevant times, Defendants City of Oakridge, and the State of Oregon, through their agents and employees (including Defendant Chrisman, Defendant Miller-Fillman, Defendant Harris, and Defendant Gillum), acted within the course and scope of their employment and under the authority of their respective governmental entities.

88.     Defendants, acting through their agents and employees, wrongfully caused criminal proceedings to be initiated against Plaintiff for the charge of initiating a false report under ORS 162.375. These proceedings were based on false allegations that Plaintiff had fabricated an incident in which Defendant Chrisman struck Plaintiff with his vehicle.

89.     At the time the criminal proceedings were initiated, Defendants, through their agents and employees, knew or should have known that there was no probable cause to charge Plaintiff with initiating a false report. Defendants were aware that Plaintiff never made a false report and that the evidence clearly demonstrated Defendant Chrisman's fault in the incident. Multiple witness statements confirmed that Defendant Chrisman drove recklessly and struck Plaintiff with his vehicle, and Defendant Chrisman himself admitted to hitting Plaintiff.

90.     Defendants, through their agents and employees, acted with malice in initiating and pursuing criminal charges against Plaintiff. Their actions were motivated by a desire to protect Defendant Chrisman from the legal consequences of his actions and to shift the blame onto Plaintiff. Defendants sought to wrongfully prosecute Plaintiff for the crime of initiating a

false report, despite knowing that the elements of the crime were not met and that the charges were unfounded.

91.    On March 16, 2023, Lane County District Attorney's Office dismissed the criminal charges against Plaintiff. The prosecutor acknowledged that "a material element of the crime cannot be proven beyond a reasonable doubt," leading to the termination of the criminal proceedings in Plaintiff's favor.

92.    As a direct and proximate result of Defendants' wrongful initiation and prosecution of criminal charges, Plaintiff suffered damages, including but not limited to, emotional distress, loss of liberty, reputational harm, legal expenses, and other financial losses. Plaintiff is entitled to recover compensatory damages under Oregon common law.

93.    Defendants City of Oakridge and the State of Oregon are vicariously liable for the actions of their employees and agents, who acted within the scope of their employment when they initiated and pursued the malicious prosecution of Plaintiff.

## COUNT VIII

### (Or. Rev. Stat. § 659A.030(1)(f) – Retaliation)

### (Against Defendant State)

94.    Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

95.    Defendant State is an "employer" within the meaning of ORS 659A.001(4) and ORS 659A.030.

96.    In violation of ORS 659A.030(1)(f), Defendant State retaliated against Plaintiff because (1) he reported being hit by a car and (2) he opposed defendants' baseless campaign to falsely claim he had intentionally set up Defendant Chrisman to hit him, by providing false

statements to law enforcement to furnish the basis for criminal charges and by issuing baseless discipline of him.

97.     As a result of Defendant State's conduct, Plaintiff suffered and continue to suffer non-economic and economic damages. Plaintiff is entitled to the relief, damages, attorney fees, costs, and interest alleged below.

98.     Plaintiff is entitled to equitable relief, including, but not limited to, reinstatement to employment, the removal of any discipline, and reversal of the effects of any discipline. Plaintiffs is entitled to an award of economic damages, or $200, whichever is greater, and compensatory damages.

99.     To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

100.     Pursuant to ORS 659A.885 and ORS 20.107, Plaintiff is entitled to recover reasonable attorneys' fees and costs, including expert witness fees.

101.     Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date they are paid.

## COUNT IX

### (Or. Rev. Stat. § 659A.030(1)(g) – Aiding and Abetting)

### (Against Defendants Gillum and Harris )

102.     Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

103.     Defendant State is an "employer" within the meaning of ORS 659A.001(4) and ORS 659A.030.

104.    In violation of ORS 659A.030(1)(g), Defendants Gillum and Harris retaliated against Plaintiff by providing false statements to law enforcement to furnish the basis for criminal charges by initiating an investigation at ODOC of Plaintiff and by issuing baseless prison discipline to plaintiff.

105.    As a result of Defendants Gillum and Harris's conduct, Plaintiff suffered and continue to suffer non-economic and economic damages. Plaintiff is entitled to the relief, damages, attorney fees, costs, and interest alleged below.

106.    Plaintiff is entitled to equitable relief, including, but not limited to, reinstatement to employment, the removal of any discipline, and reversal of the effects of any discipline. Plaintiffs is entitled to an award of economic damages, or $200, whichever is greater, and compensatory damages.

107.    To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

108.    Pursuant to ORS 659A.885 and ORS 20.107, Plaintiff is entitled to recover reasonable attorneys' fees and costs, including expert witness fees.

109.    Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date they are paid.

## PRAYER

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment granting him:

   a)  A declaration that the acts and omissions described herein violated his rights under the U.S. Constitution;

PAGE 21 – COMPLAINT

b)  Equitable relief ordering defendant ODOC to remove any discipline of plaintiff arising from the incidents described herein;

c)  An award of compensatory (both economic and noneconomic) and First Amendment damages in a sum that is just as determined by a jury;

d)  An award of punitive damages in a sum that is just as determined by a jury;

e)  Plaintiff's costs and attorney fees in this suit, and

f)  Any additional relief this court deems just, proper, and equitable.

**Plaintiff demands a trial by Jury.**

Dated: September 26, 2024

**Law Offices of Daniel Snyder**

_/s/ John David Burgess_
Carl Post, OSB No. 06105
carlpost@lawofficeofdanielsnyder.com
John David Burgess, OSB 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Attorneys for Plaintiff